RADER, Chief Judge,
dissenting.
“[A]ny claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed. A court cannot go hunting for abstractions by ignoring the concrete, palpable, tangible limitations of the invention the paten-tee actually claims.” Ultramercial, Inc. v. Hulu, LLC, 722 F.3d 1335, 1344 (Fed.Cir. 2013). In my judgment, the court has done precisely that. Therefore, I respectfully dissent.
I.
As an initial matter, the court relies significantly on the framework proposed by the plurality opinion in CLS Bank Int’l v. Alice Corp., 717 F.3d 1269 (Fed.Cir. 2013) (en banc). However, no part of CLS *1347 Bank, including the plurality opinion, carries the weight of precedent. The court’s focus should be on Supreme Court precedent and precedent from this court.
I also disagree that Accenture’s failure to appeal the invalidation of the method claims estops it from arguing that the elements contained therein (and shared by the systems claims) are directed to patent-eligible subject matter. Majority Op. at 1342 (“Because the '284 patent’s method claims have been found to be patent ineligible, we first compare the substantive limitations of the method claim and the system claim to see if the system claim offers a ‘meaningful limitation’ to the abstract method claim, which has already been adjudicated to be patent-ineligible.”). No precedent from the Supreme Court or this court supports this proposition. Moreover, the court creates a very unsound policy by requiring litigants to appeal the invalidity of every claim or else risk the potential for estoppel or waiver of other claims. In simple words, Accenture’s willingness to narrow issues should not create an admission that defeats its appealed claims. The court today sends a signal that cautious litigants must appeal everything to avoid losing important claims.
The court weakly reasons that “[a]l-though CLS Bank issued as a plurality opinion, in that case a majority of the court held that system claims that closely track method claims and are grounded by the same meaningful limitations will generally rise and fall together.” Majority Op. at 1341. However, five of the judges who held that the method claims and system claims rise or fall together stated:
To be clear, the fact that one or more related method claims has failed under § 101, as here, does not dictate that all associated system claims or even all associated method claims must suffer the same fate.... [A] system claim that builds on the same abstract idea as a patent-ineligible method may well incorporate sufficient additional limitations, computer-based or otherwise, to transform that idea into a patent-eligible application.”
CLS Bank, 717 F.3d at 1291 n. 4 (opinion of Lourie, J.). Two other judges held that the claims in CLS Bank rise or fall together simply due to the record to which the court was bound, “not because, as [the plurality] opinion concludes, they are all tainted by reference to the same abstract concept.” Id. at 1327 (opinion of Linn, J.). And four judges specifically held that “[d]ifferent claims will have different limitations; each must be considered as actually written.” Id. at 1298 (opinion of Rad-er, C.J.). This latter view was recently affirmed by the court: “the question of eligible subject matter must be determined on a claim-by-claim basis.” Ultramercial, 722 F.3d at 1340. In sum, the court actually follows a procedure rejected almost unanimously by this court.
II.
On the merits, I would hold that the claimed systems present patent-eligible subject matter. The claims require a specific combination of computer components, including an insurance transaction database, a task library database, a client component, and a server component that includes an event processor, task engine, and task assistant. Transaction information is stored in an electronic “claim folder” organized into a plurality of different levels. The event processor is triggered upon the occurrence of certain events, which in turn, triggers the task engine and the task assistant to perform certain functions. The claims also require the server component to be in communication with the client component, the insurance transaction database, and the task library database.
The court strips away these limitations and concludes that “the abstract idea at *1348 the heart of system claim 1 is generating tasks based on rules to be completed upon the occurrence of an event.” Majority Op. at 1344. “[A]ll inventions at some level embody ... [an] abstract idea,” and dissecting from a claim all of its concrete limitations is one step closer towards “eviscerating] patent law.” Mayo Collaborative Servs. v. Prometheus Labs., Inc., — U.S. -, 132 S.Ct. 1289, 1293, 182 L.Ed.2d 321 (2012). The claims offer “significantly more” than the purported abstract idea, id. at 1298, and meaningfully limit the claims’ scope.
Indeed, someone can “generate tasks based on rules to be completed upon the occurrence of an event” in a number of ways without infringing the claims. See CLS Bank, 717 F.3d at 1277 (opinion of Lourie, J.) (“[T]he Supreme Court’s foundational § 101 jurisprudence ... turns primarily on the practical likelihood of a claim preempting a fundamental concept.”); id. at 1300 (opinion of Rader, C.J.) (“Preemption is only a subject matter eligibility problem when a claim preempts all practical uses of an abstract idea.”). For example, one could use a single database rather than the recited multiple databases; one could utilize an electronic claim folder decomposed into a different plurality of levels or into non-insurance related levels (ie., levels other than a policy level, claim level, participant level, and line level); and one could use something other than a client-server architecture. Moreover, because the claims require specific computer components, a human performing the claimed steps through a combination of physical or mental steps likewise does not infringe. In sum, this system does not preempt anything beyond the specific claims, let alone a broad and undefined concept.
III.
In conclusion, I note that prior to granting en banc review in CLS Bank, this court commented: “no one understands what makes an idea abstract.” CLS Bank Int’l v. Alice Corp., 685 F.3d 1341, 1349 (Fed.Cir.2012), opinion vacated, 484 Fed. Appx. 559 (Fed.Cir.2012) (internal quotations marks omitted). After CLS Bank, nothing has changed. “Our opinions spend page after page revisiting our cases and those of the Supreme Court, and still we continue to disagree vigorously over what is or is not patentable subject matter.” MySpace, Inc. v. GraphOn Corp., 672 F.3d 1250, 1259 (Fed.Cir.2012); see generally CLS Bank. Indeed, deciding what makes an idea “abstract” is “reminiscent of the oenologists trying to describe a new wine.” MySpace, 672 F.3d at 1259.
I take this opportunity to reiterate my view that “the remedy is the same: consult the statute!” CLS Bank, 717 F.3d at 1335 (additional reflections of Rader, C.J.). The statute offers broad categories of patent-eligible subject matter. The “ineligible” subject matter in these system claims is a further testament to the perversity of a standard without rules—the result of abandoning the statute. I respectfully dissent.